## LEWIS and others *vs.* McMILLEN and others.

Before a purchaser can set up, as a defense to an action on a note given as collateral security for an installment of the purchase money, the inability of the vendor to give a good title to a portion of the premises, he must surrender the possession of the premises.   E. D. SMITH, J. dissented.

The fact that a vendor, though he has a perfect title to four-fifths of the premises contracted to be sold, has not a perfect title evidenced by a written conveyance, for one-fifth, although it may afford a reason for rescinding the contract by the purchaser, yet it can furnish no ground for his refusing all payment, without rescinding.

The purchaser will be compelled either to affirm, or to disaffirm and rescind, the contract, *in toto.*  He will not be allowed to affirm so much of the contract as is advantageous to himself, and enjoy all its benefits, and disaffirm and reject that which is burdensome.

It cannot be pretended that a purchaser has rescinded the contract, so long as he holds the possession of the premises, under it.   He must rescind by acts as well as words, or it is no rescission.

Where the action is not upon the contract of sale, nor between the parties to it, but upon a separate and independent promise by the purchaser and other parties, to pay the vendor the sum specified, at a particular day, before the defendants can defeat the action entirely, they must show either fraud in the transaction in which the note had its inception, or an entire want, or failure, of consideration.   A partial want, or failure, of consideration cannot be alleged in bar.

Even if the vendors refuse to convey, if the contract is still executory on their part, such refusal is no bar to an action upon a separate note, given to secure one or more of the payments.   The party must pay his note, and take his remedy upon the contract, to recover his damages for the breach.  *Per* JOHNSON, J.

Parties signing such note as mere sureties for the purchaser, having no interest in the contract, cannot set up the breach of such contract as a defense against an action upon their promise.   Their remedy is against their principal, for any sum they may be compelled to pay on the note.

Where the contract of sale in express terms makes the payment of the purchase money a condition precedent to the right of the purchaser to a conveyance, and in addition to this the purchaser gives his note for one of the payments, and procures other persons to sign it jointly with him, this puts the intention to make the note in the nature of an independent promise, or a condition precedent, beyond all doubt.

MOTION by the defendants for a new trial upon a case with exceptions, directed to be heard in the first instance at general term.   The action is upon a promissory note for

$1000, made by McMillen as principal and Hannan and Van Ness as sureties. It has been twice tried. (*See* 31 *Barb.* 395, *S. C.*) On the second trial at the Ontario circuit, on the 10th day of November, 1862, before Mr. Justice WELLES and a jury, it was proved that on the 21st day of April, 1857, the plaintiffs, assignees of Cuyler Trask, entered into a contract with McMillen to sell to him a farm in Victor, of about ninety-six acres, at $34.50 per acre. McMillen agreed to pay $300 May 15, 1857, $200 the first day of November, 1857, and $1000 May 1, 1858, upon which payment, and his giving a bond and mortgage as hereinafter mentioned, the plaintiffs were to "convey in fee, by a good and sufficient deed," the farm to McMillen, and he was to execute a bond and mortgage to the plaintiffs for the residue of the purchase money. The payment of the money is declared by the contract "to be a condition precedent to the execution of a deed." The note in question was given at the execution of the contract, as collateral security for the payment of the $1000 installment. McMillen, about the time of the execution of the contract, took possession of the farm; on the 15th of May, 1857, paid the $300 installment, and on the 2d of November, 1857, paid the $200 installment. It was offered by the defendants to prove the second defense in the answer, which sets forth the contract, and alleges that the note was made as collateral security for the payment of the installment of $1000; that the plaintiffs procured the land to be surveyed, by which it was ascertained there were ninety-five and thirty-six one-hundredths acres; that the defendants paid the first two installments; that on the first day of May, 1858, McMillen tendered to the plaintiffs $1200 for the principal and interest, payable that day, and offered to execute his bond and mortgage, according · to the contract, and demanded of the plaintiffs a good and sufficient deed of conveyance in fee of the farm, which the plaintiffs were unable to and refused to give; that the plaintiffs had not at the making of the contract, and have not

Lewis *v.* McMillen.

had since, a good and valid title in fee to the farm; and that because the plaintiffs were unable to convey, McMillen required a rescission of the contract and repayment of what he had paid, and offered to relinquish possession of the farm, but the plaintiffs refused to accede to the offer. It was further offered by the defendants to prove their third defense in the answer, which avers that McMillen has at all times been ready to perform the contract on his part, but the plaintiffs are unable to perform; that at the making of the contract the plaintiffs affirmed they had a good and valid title in fee to the premises; that McMillen entered into the contract on the faith of such affirmation; that the defendants did not discover the defects in the title until a short time before the first of May, 1858; that on that day the defendants offered to surrender to the plaintiffs the possession of the premises, and required a rescission of the contract and repayment of the sums paid, which the plaintiffs refused to do. The defendants made various other offers of proof, in substance, of tender of payment of the $1000 installment with interest, on the first day of May, 1858; a demand of the plaintiffs of a conveyance in fee of the farm; that the plaintiffs had not, and admitted they had not, title to the premises; and that they have not at any time been able to convey the same in fee. The offers were severally objected to, the objections sustained, and exceptions taken. The ground upon which the evidence was excluded by the judge was, that by the express terms of the contract, the payment of the money for which the note was given was made a condition precedent to the execution of a deed by the plaintiffs, and that the defendant McMillen had taken and still held the possession of the premises. The jury, under the direction of the court, rendered a verdict for the plaintiffs for the amount of the note and interest.

*E. G. Lapham*, for the plaintiffs. I. The $1000 to secure the payment of which the note was given, was by the terms of the contract to be paid in one year from the first day of

Lewis *v.* McMillen.

May, 1857.    Upon such payment being made, which "payment is hereby declared to be a *condition precedent to the execution of a deed*" by the plaintiffs, the plaintiffs have covenanted that they will sell and convey in fee by good and sufficient deed, the premises in question, to the defendant McMillen.    The point presented is whether the defendants are in a situation to question the plaintiff's title, until after they have complied with such condition precedent.    Conceding, for the purpose of the argument, the correctness of the cases which hold that when in such a contract money is to be paid by the purchaser on a given day, and a conveyance to be made by the vendor at the same time, the law will adjudge the covenants to be *dependent,* so that neither party can recover without performance, or an offer to perform, on his part, it will be seen, on examination, that they are cases where the contract is silent as to whether performance by one party is to precede that of the other.    Such is not the present case; here the parties have expressly declared that payment of the $1000 shall precede and not be concurrent with the execution of a conveyance.    By the terms of the agreement performance by the defendant was to precede that of the plaintiffs, and the defendants who were to do the first act being in default are liable to be sued, though nothing has been done or offered by the plaintiffs.    (*Morris* v. *Sliter,* 1 *Denio,* 59.)    If there is a day fixed for the payment of money, and this comes before the *time fixed for doing the thing,* the payment becomes obligatory, and an action may be brought for the money independently of the act to be done.    (2 *Parsons on Cont.* 189.)  A condition precedent must be performed before the obligation becomes binding.    (1 *Bouv.* 287, *No.* 741.)    Precedent conditions must be literally performed.    (4 *Kent,* 125.)    When by the terms of a contract for the sale of land an installment is payable previous to the time fixed for the conveyance, a suit may be maintained for such installment, and want of title in the vendor is no bar to a recovery.    (17 *Wend.* 376.)

It will be observed that in this case performance by each is

not made a condition precedent to performance by the other, but that condition is attached to the covenant of the defendant McMillan. The case is therefore directly within the rule laid down in *Dey* v. *Dox*, (9 *Wend.* 129, *see page* 183,) according to which the plaintiffs may recover without showing performance on their part. According to this last case the plaintiffs' covenant to convey is dependent upon the prior payment by McMillen, but the promise by McMillen to pay is independent of performance by the plaintiff. The clause giving the plaintiffs the right to forfeit in case McMillen should fail to perform at the *time provided*, aids in the construction contended for. (*See Wells* v. *Smith*, 2 *Edw. Ch.* 78, 83, 84.) The vice chancellor in this last case uses this strong language: " The condition of the contract in question is clearly a *condition precedent*. No one can peruse it without perceiving that every act which the complainant has stipulated to perform is antecedent to what the defendant is to do." There is another peculiarity in the language of the contract, which farther tends to illustrate what was the intention of the parties. At and upon receiving a deed McMillen is to make and deliver a mortgage to secure the balance after the payment of the first $1500, and then it is declared such payment is to be a condition precedent to the execution of the deed. Then the fact that such payment was secured by the note in question farther serves to show that it was a payment to be made at all events, and that McMillen relied upon his remedy and not on performance of the covenant to convey. It will be seen by reference to the report of this case when formerly before the court these distinctions were not adverted to, but the case was treated as a general contract to be performed by each party at the same time, as are all the cases cited by the defendants' counsel. As to the effect of such former decision, if inadvertently made, see 4 *Hill*, 200, and 6 *id.* 440.

II. The plaintiffs, by accepting the note of the defendants for the $1000 installment and interest, have lost their equitable lien on the land for that portion of the purchase money,

and are for that reason entitled to maintain this action. (*See Vail* v. *Foster,* 4 *Comst.* 312.)

III. Assuming that McMillen was ready to pay the note on receiving a good title, and that he had a right to such title, or he might rescind and recover back what he had paid, (20 *John.* 15,) still he could not resort to such remedy without surrendering possession at once, on default of the plaintiffs. (*Lawrence* v. *Dale,* 3 *John. Ch.* 23, 41. *Lowber* v. *Selden,* 11 *How. Pr.* 526. *More* v. *Smedburgh,* 8 *Paige,* 600.) He did not surrender, but it is admitted he has had the full possession and use ever since the agreement. His only remedy, therefore, if any, for a breach of the covenant to convey by reason of the alleged defect of title, is a remedy in damages, and this he has not sought. He cannot interpose it as a bar to the plaintiffs' action and still retain the whole benefit of the contract on his part. Again, the case comes within the principle that where the alleged breach goes only to part and not to the whole consideration, the party has his remedy in damages for a breach of such part, but cannot insist upon the same as a bar to the action. (20 *Barb.* 429.) The grantee being and remaining in possession under his contract, it is no defense to an action for a portion of the purchase money that the vendors have not a perfect title. (*Lamerson* v. *Marvin,* 8 *Barb.* 9.)

IV. The several offers of evidence made after the principal ruling at trial do not materially change the case or affect the verdict, and were properly refused.

*T. R. Strong,* for the defendants. I. The conveyance of the farm by the plaintiffs to the defendants, in fee, by a good and sufficient deed, on the 1st day of May, 1858, and the payment by McMillen of $1000, and interest on account of the purchase money, on that day, were by the contract dependent acts, to be concurrently performed. To entitle the plaintiffs to recover that installment by action on the contract, it was necessary for them on that day to offer to McMillen a deed

which would give him the title to the farm in fee. And to entitle McMillen to an action against the plaintiffs for a breach of their agreement to convey, it was necessary for him on that day to tender them that installment. The failure by either to perform, or do what was equivalent to it on that day, was a breach of the contract, and the party in fault could not maintain an action against the other. (*Jones* v. *Gardner,* 10 *John.* 266. *Johnson* v. *Wygant,* 11 *Wend.* 48. *Williams* v. *Healey,* 8 *Denio,* 363. *Grant* v. *Johnson,* 1 *Selden,* 247. *Lester* v. *Jewett,* 1 *Kern.* 453. *Opinion of this court, by Smith, J. in this case,* 31 *Barb.* 395.)

II. This is so, notwithstanding the clause of the contract declaring the payment of the money to be a condition precedent to the execution of a deed. That clause does not affect the nature of the covenants; they are still mutual conditions to be performed at the same time. 1. It means nothing more than is stated in a former part of the contract, that the conveyance is to be *upon* the payment of the money, &c., which the cases above cited show does not make the covenant to convey dependent, otherwise than as a concurrent act with payment. Each act is made dependent upon the other, but both are to be performed at the same time. The clause is part of the printed blank used in making the contract, and only declares in terms what would have been the legal effect of the previous provisions without it. Taking the whole language of the contract on the subject together, such is the evident meaning and just construction of the contract. 2. This clause in terms applies to the whole purchase money, as well that payable after the 1st of May, 1858, as what is payable at and before that time. Of course, payments to be made after the 1st of May, 1858, cannot be conditions precedent to a conveyance on that day, which proves the parties did not mean by it what the language mentioned above would import. It is to be construed in reference to other parts of the contract, which, as a whole, makes the conveyance and the payment of the $1000 installment mutual conditions.

III. Treating payment as a strict condition precedent to a conveyance, the only effect would be that in an action on the contract, for purchase money, the plaintiffs would not be obliged in the first instance to prove performance, or what is equivalent on their part; it would not preclude McMillen, in such an action, from proving the plaintiffs had not title and availing himself of it as a defense. And the defendants in this action may do the same thing. (*Holmes* v. *Holmes*, 12 *Barb.* 137, 144, 145. *Judson* v. *Wass*, 11 *John.* 525. *Lawrence* v. *Taylor*, 5 *Hill*, 107, 115. *Harrington* v. *Higgins*, 17 *Wend.* 376. *Sage* v. *Ranney*, 2 *id.* 532, 534. *Morange* v. *Morris*, 34 *Barb.* 311, 314, 315.)

IV. The plaintiffs, by the contract, impliedly warrant the title to the premises; and the breach of their warranty by not having title, and inability therefore to convey in fee, according to the contract at the time appointed, relieves McMillen from the obligation of payment. It is not material in respect to this position, whether payment is a condition precedent to the obligation of the plaintiffs to convey, or not; for, assuming it is so, and that the plaintiffs might maintain the action without proof of the performance on their part, want of title is a valid answer to the claim of payment. While McMillen might not be able in an action on the contract to defend on the ground that the plaintiffs had not proved they had conveyed or tendered a conveyance in fee, he might—and the defendants in this action may—show want of title in the plaintiffs, and thus defeat the action. This defense of want of title is wholly irrespective of the question whether the plaintiffs or McMillen were to perform first, or they were to perform concurrently; in either case want of title in the plaintiffs is a defense. (*Fletcher* v. *Button*, 4 *Comst.* 396. *Burwell* v. *Jackson*, 5 *Seld.* 535. *Pomeroy* v. *Drury*, 14 *Barb.* 418. *Judson* v. *Wass*, 11 *John.* 525. *Holmes* v. *Holmes*, 12 *Barb.* 137, 144, 145. *Lawrence* v. *Taylor*, 5 *Hill*, 107, 115.)

V. The note in question was executed simultaneously with the contract, and formed part of it. The effect of it was that

Lewis v. McMillen.

Hannan and Van Ness became sureties for the payment of the $1000 installment. The payment of that installment would have satisfied the note, and the failure of the plaintiffs and their inability to perform exonerated McMillen, and of course, his sureties, from the payment of the money. The note had no consideration independent of the contract. The contract of the sureties is collateral only to the obligation of McMillen to pay, and if McMillen is discharged, the sureties are of course discharged. (*Opinion of this court by Smith, J. in this case*, 31 *Barb*. 395.)

VI. The possession of McMillen does not vary the case; his obligation to pay the $1000 and interest, is by the contract dependent upon a conveyance to him by the plaintiffs, of the farm in fee. Whether he is in or out of possession is not material; he was not bound to pay if he could not have such a conveyance. Besides, McMillen offered to surrender the possession and rescind the contract. This is all he could do. (*Grant* v. *Johnson*, 1 *Selden*, 247. *Fletcher* v. *Button*, 4 *Comst*. 396. *Opinion of this court by Smith, J. in this case*, 31 *Barb*. 395.)

VII. The justice at the circuit therefore erred in rejecting evidence, overruling the offers of proof and directing a verdict for the plaintiffs, for which errors a new trial should be granted.

JOHNSON, J. The learned justice before whom this cause was last tried, and whose rulings we are now called upon to review, felt constrained to adopt the same ruling substantially, which was made on the first trial of the cause in April, 1859, in order to prevent a complete failure of justice between the parties. That ruling was held to be erroneous, and a new trial was granted for that reason, by this court, at the March term, 1860. (*See* 31 *Barb*. 395.) The history of this case, since the first trial, seems to me to furnish a most forcible and convincing illustration of the soundness of the ruling at the circuit, and of the fallacy of the decision of the general term in

granting a new trial. In the fruitless search of some other principle upon which even tolerable justice could be meted out to the parties, it has since that time been under repeated investigation both at the circuit and at the general term; and finally comes back to rest on the same ground on which it was then placed. In the mean time the defendant McMillen has been in the full and complete possession and enjoyment of all the benefits and advantages secured to him by the contract which formed the consideration of the note in question, uninjured and undisturbed by any adverse title, or claim of title whatever. He has retained the entire possession and enjoyment of the plaintiff's property under that contract, for a period of nearly seven years, and still retains the same, while refusing to fulfill his obligations under the same contract. If this can be done for this period, it may upon the same principle, for aught I can see, be indefinitely continued, and result in securing to McMillen the entire property for all time, without making any compensation therefor. It remains to be seen whether a principle which produces such results can be sound in law. I am confident, notwithstanding our former decision, that the principle can be shown to be unsound and untenable, not only upon the clearest dictates of reason, but upon well settled authority. If the action were directly upon the contract, and between the parties to it only, it being an executory contract on both sides, the law would not allow the purchaser to repudiate his obligation to make payment while retaining and enjoying the consideration of his promise. He could not thus both affirm and disaffirm the contract. He would not be allowed to affirm so much of the contract as was advantageous to himself, and enjoy all its benefits, and disaffirm and reject that which was burdensome. He would be compelled either to affirm, or to disaffirm and rescind, *in toto*. This must be so, especially in a case like this, where the plaintiffs have offered to perform fully on their part, according to the terms of the contract; and all the purchaser is able to say in respect to this offer is, that although the plaintiffs

have a perfect title to four-fifths of the premises contracted to be sold, they have not a perfect title evidenced by a written conveyance for one-fifth. This, it must be conceded, if true, might furnish ground for rescinding the contract by the purchaser, but it could furnish no ground for refusing all payment, without rescinding. Unless this is so, there is no such thing as mutuality in contracts. It is idle to pretend that the purchaser here has rescinded the contract, when it is undisputed that he has held the plaintiff's property under it for six or seven years and still holds and enjoys the same. He must rescind by acts as well as words, or it is no rescission. Our decision at general term was to the effect that in such a case and under such circumstances, no payments whatever could be enforced. Thus the purchaser is enabled to keep the whole by virtue of the contract, without incurring any obligation to pay any thing. His refusal to pay, according to our decision, is no breach of the contract on his part, for the contract did not bind him to pay, unless the plaintiffs were seised of a perfect title in law to each and every acre of the land they contracted to sell and convey. And all this without requiring him to rescind and restore what he had received. This cannot be good law.

But this action is not upon the contract, nor between the parties to it. The action is upon a separate and independent promise by the purchaser and other parties, to pay the plaintiffs the sum specified at a particular day. The consideration of this promise, it is true, is the agreement of the plaintiffs with McMillen. But before the defendants can defeat the action entirely, they must show either fraud in the transaction in which the note has its inception, or an entire want, or failure, of consideration. A partial want, or failure, of consideration cannot be alleged in bar; and no fraud is shown.

It is quite manifest that here is no entire failure of consideration. The plaintiffs have not refused to convey, but offer to convey the entire premises, and insist upon their right to the whole, and this right to the largest portion by far is con-

Lewis *v.* McMillen.

ceded. But, even if the plaintiffs had refused to convey, the contract being still executory on their part, the cases are abundant to show that such a refusal is no bar to an action upon a separate note, given to secure one or more of the payments. The party must pay his note, and take his remedy upon the contract, to recover his damages for the breach. In such case the payment of the note, and the conveyance, are not concurrent, but independent acts. The note is in the nature of a condition precedent, and must be paid. This was expressly ruled in *Spiller* v. *Westlake*, (2 *B. & Ad.* 155 ; 22 *Eng. C. Law*, 49.) In that case Lord Tenterden, C. J. says : " I can see no reason why he should have executed a distinct instrument, whereby he promised to pay a part of the purchase money on a particular day, unless it was intended that he should pay the money on that day at all events." Parke, J. was inclined to the opinion that the defense might have been maintainable, if the circumstances had been such that had the defendant paid the money he would have been entitled to recover it back in an action brought by him, which he held could not be done as long as the contract remained open. Here the contract remains still open, neither party having rescinded or attempted to rescind. To the same effect precisely are the cases of *Freeligh* v. *Platt*, (5 *Cowen*, 494;) *Moggridge* v. *Jones*, (14 *East*, 486 ; 3 *Camp.* 38, *S. C.*) and *Chapman* v. *Eddy*, (13 *Vt. R.* 205. 1 *Pars. on Bills*, 203, *note z.*) These are all cases arising between the parties to the contract. But here two of the parties to the note have no interest in the contract, and the case is still stronger in favor of the plaintiffs. As between the defendants, Hannan and Van Ness, and the plaintiffs, there is no privity of contract except in respect to this note. Those defendants have no interest whatever in the contract, and could maintain no action for any breach of it. They are mere sureties of McMillen, and their remedy is upon their principal, for any sum they may be compelled to pay on the note. Being mere sureties of McMillen, and having no interest in the contract, they

cannot set up the breach of such contract as a defense against their promise. (*Gillespie* v. *Torrance*, 25 *N. Y. Rep.* 306. 2 *Parsons on Notes and Bills*, 536, 537. *Webb* v. *Spicer*, 13 *Q. B.* 886. *Salmon* v. *Webb*, 16 *Eng. Law and Eq.* 37.) But as between McMillen and the plaintiff, the contract in express terms makes the payment a condition precedent to the right of the former to a conveyance. That, I think, would be sufficient even if the action was directly upon the contract. In addition to that, however, the purchaser gave his note for the payment, and procured other persons to sign it jointly with him; and this puts the intention to make the note in the nature of an independent promise, or a condition precedent, beyond all doubt.

The contract being, as we have seen, still open and unrescinded, and the defendant McMillen being in the full enjoyment of the benefit of the consideration of the note, is in no situation to resist payment. *Parsons*, in his book on *Bills and Notes*, at page 203, notices a distinction between the failure of the consideration of a note, and the failure of a benefit resulting from it. As where one party promises another to do a certain thing, and the other gives his note to the promissor, in consideration of such promise, the latter cannot defend against the note, on the ground of a failure of the consideration, so long as he retains the promise made to him, or if it be of such a nature that the other party is permanently held upon it. Before he can defeat the note he must cancel the promise. And in *Wright* v. *Delafield*, (23 *Barb.* 498,) it was held that a purchaser of land could not keep the land and refuse to pay for it, whether the title was good or bad. That if it was bad he must elect to take it as it was, or as the vendor could make it, and pay for it, or else give it up. And that, as the purchaser did not elect to give up the land, he must pay for it according to his agreement.

This is only stating in another form a very familiar and elementary rule of law, that where one obtains a right to the possession of land, and to the use and profits thereof, by

Lewis *v.* McMillen.

virtue of an agreement, he cannot while thus holding the land dispute the title of him from whom he obtained it, and refuse to perform his agreement under which he entered and continues to hold. Before he can do this he must surrender the possession and place the party in *statu quo*. In other words he must rescind *in toto*, by restoring what he received.

The learned justice who delivered the opinion in this case on a former occasion upon granting a new trial, as reported 31 *Barbour*, 395, admits that had the defendants paid the note in question, voluntarily, it could not, upon the evidence in the case, have been recovered back. This conclusion is of itself fatal, not only to the defense but to the authority of the point then decided. For it is most manifest, in a case like this, that the principle upon which payment may be lawfully refused, and that upon which the money if paid voluntarily might be recovered back, are identical, to wit, fraud or the failure of the consideration. The difficulty in the way of the defendants, in either case, is enhanced by the fact that they are not all parties to the contract.

This case is not affected in any respect by the decision in *Fletcher* v. *Button*, (4 *Comst.* 396.) That was an action to recover back the purchase money paid, where it was conceded that the vendor was wholly without title to any portion of the premises. No question was raised by the pleadings as to the purchaser having obtained any rights under the contract, or as to its having been rescinded or otherwise. On the contrary, it was conceded by the answer that the plaintiff was entitled to recover back the money paid, and the only claim made by the defendant was a right of set off for use and occupation, against the amount of payments made. That case is wholly unlike this, not only in its facts but in respect to the questions raised by the pleadings and litigated upon the trial. Nor is this case to be confounded with that class of cases where a note is given in consideration of a conveyance made, and the title has failed ; nor with those cases where the action is directly upon the contract which the

purchaser has rescinded on the ground that the vendor has no title.

The action here is upon a separate promise, executed in part by persons who are not parties to the contract, and which contract is still open, neither party having put an end to it, on account of the default of the other, but each retaining every thing acquired under it. How can the court say that the plaintiffs shall not have the benefit of the contract, on their side, to recover according to its terms the value of the property which the defendant McMillen obtained from them by means of it, and which he still keeps and enjoys, and holds from them only. It was in consideration of his promise that he obtained the possession of these premises, and has so long enjoyed their use, and as long as he elects to keep the consideration and the benefits resulting from it, the law must hold him to his promise, and allow the other party to enforce it. Before the court can have any right to absolve him from his promise he must do works meet for such absolution, which he has not yet done. It would be monstrous injustice, as it seems to me, in the court to drive the plaintiffs to rescind the contract and seek some other remedy outside of it, in order to wrest the property from the tenacious grasp of the purchaser. They do not wish to rescind, and indeed under the authority of our former decision might find great difficulty in doing so should they attempt it. They prefer to enforce this joint and several promise of the defendants, and to respond to McMillen alone, if he shall prefer any claim for any breach of the contract, between themselves and him. This I think they should be allowed to do. I am of opinion, therefore, that our former decision in this case was clearly erroneous and should be reversed, and that the ruling at the circuit should be sustained and a new trial denied.

WELLES, J. concurred. E. DARWIN SMITH, J. dissented.

New trial denied.

[MONROE GENERAL TERM, December 7, 1863. *Welles, E. Darwin Smith* and *Johnson*, Justices.]